# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 10, 2023
Lyle W. Cayce
Clerk

No. 22-20047

_____

A & R Engineering and Testing, Incorporated,

*Plaintiff—Appellee*,

*versus*

John Scott, *Attorney General of Texas*,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3577

_____

Before Stewart, Willett, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

     Under Texas law, parties to municipal contracts must certify that they do not and will not boycott Israel for the duration of their contracts. The City of Houston offered A&R Engineering and Testing, Inc. a contract with an anti-boycott clause. A&R refused to sign and brought a § 1983 suit against the City and the Texas Attorney General. The district court entered a preliminary injunction against the City and the Attorney General. The Attorney General appealed, arguing that A&R lacks standing. We agree. We reverse and remand with instructions to vacate the injunction and dismiss the suit against the Attorney General.

No. 22-20047

I.

Rasmy Hassouna is the owner of A&R Engineering and Testing, Inc. ("A&R"). He also is a Palestinian proponent of the Boycott, Divestment, and Sanctions ("BDS") movement, which encourages the use of economic sanctions and other nonviolent pressure against Israel. Hassouna and A&R both boycott Israel.

A&R has provided engineering services for the City of Houston ("the City") for seventeen years. In the year preceding this lawsuit, the City paid A&R $300,000 for its work. Hassouna anticipated that A&R would continue to contract with the City for the foreseeable future.

In 2017, Texas enacted an anti-BDS statute that requires state governmental entities to include clauses in their contracts certifying that contractors do not and will not boycott Israel throughout the duration of the contracts. Tex. Gov't Code § 2271.002(b). The full statute says:

> Provision Required in Contract
> (a) This section applies only to a contract that:
> > (1) is between a governmental entity and a company with 10 or more full-time employees; and
> > (2) has a value of $100,000 or more that is to be paid wholly or partly from public funds of the governmental entity.
> (b) A governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:
> > (1) does not boycott Israel; and
> > (2) will not boycott Israel during the term of the contract.

*Id.* § 2271.002.

The statute defines "boycott Israel" to mean:

No. 22-20047

> "Boycott Israel" means refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory, but does not include an action made for ordinary business purposes.

*Id.* § 808.001(1); *see id.* § 2271.001(1) (adopting by cross-reference § 808.001(1)'s definition of the phrase).

In October 2021, the City sent A&R a renewal contract. Hassouna valued the renewal contract at $1.5 million—or 10% to 15% of A&R's business. But this new contract included an anti-boycott provision, which the parties had not previously included in their contracts. A&R refused to sign the contract until the City removed the provision. The City rejected A&R's request.

A&R then filed this suit against the City of Houston and the Texas Attorney General. A&R brought as-applied and facial constitutional challenges under § 1983, seeking damages and injunctive relief. Specifically, A&R requested the court declare the Texas law unconstitutional under the First and Fourteenth Amendments, strike anti-boycott clauses from proposed and current contracts with the City or the State of Texas, order the City to offer A&R a new contract without the clause, temporarily restrain the City from awarding the contract to another party during the course of the litigation, and award A&R economic damages against the City.

A&R subsequently sought a preliminary injunction. The district court granted it:

> The Defendant City of Houston ("Houston") is hereby enjoined from including, in its proposed contract with Plaintiff, the clause found in Subsection 2.19.1 of the contract's current

draft. With this exception, Houston and Plaintiff are free to negotiate (or not) the terms of Plaintiff's further employment. The State of Texas is hereby enjoined from attempting to enforce Chapter 2271 of the Texas Government Code as to either Plaintiff or Houston in the negotiation or performance of the contract for Professional Materials Engineering Labor and Services . . . , if and when it is executed.

ROA.521–22. The Attorney General appealed.

Shortly thereafter, A&R and the City entered a contract without the anti-boycott provision. A&R then filed a "Suggestion of Mootness," which the Attorney General opposed.

## II.

"Article III jurisdiction is always first. Here, it's also last." *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (quotation omitted). We (A) begin with our own jurisdiction and then (B) turn to the district court's. We (C) conclude by addressing A&R's remaining counterarguments.

### A.

A&R contends that we lack jurisdiction over the appeal because the case is now moot. Mootness, of course, is a jurisdictional defect. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam). Our inability "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964). As the Supreme Court has explained:

> The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing

No. 22-20047

party. In that case, any opinion as to the legality of the challenged action would be advisory.

*City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quotation omitted). A case is not moot when the party invoking appellate jurisdiction is laboring under the pain of an injunction. *See id.* at 288; *accord* R. Fallon, J. Manning, D. Meltzer & D. Shapiro, Hart & Wechsler's Federal Courts and the Federal System 202 (7th ed. 2015) [hereinafter Hart & Wechsler].

This appeal is not moot. The district court entered an injunction against the State of Texas, and that injunction remains in effect. It explicitly bars the Attorney General from initiating enforcement actions while the parties' contract is live. And the injunction applies to *any* "attempt[] to enforce" Chapter 2271 in the "performance of the contract . . . if and when it is executed." Texas's efforts to win vacatur of that injunction plainly render the appeal not moot.

B.

Next we turn to the district court's jurisdiction. It had none.

To satisfy the Article III case-or-controversy requirement, plaintiffs must have standing to sue "at the time the action commence[d]." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). A&R must satisfy the familiar tripartite test. It must show it suffered (1) an "injury in fact" (2) that's "fairly traceable" to the Attorney General's conduct and (3) that's likely "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation omitted).

First, injury in fact. A&R must show it "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S.

No. 22-20047

330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Any intangible harm must have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 341. Monetary harms "readily qualify." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Finally, the injury must exist when plaintiffs filed the complaint. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (requiring "a personal interest in the dispute . . . at the outset" of the case for standing).

Here, as the district court noted, A&R "suffered, or may soon suffer, an injury by losing the opportunity to renew its contract with Houston." ROA.502. The lost opportunity is connected to a financial loss. *See TransUnion*, 141 S. Ct. at 2204; *cf. In re Taxable Mun. Bond Secs. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (injury based on a "lost opportunity" must show actual financial loss). And the loss isn't speculative. A&R retained records of how much it made in previous contracts, and A&R owner Hassouna testified about A&R's expected profits from its contract with the City.

Second, traceability. The economic harm and lost opportunity are traceable to the City. The City after all is the party responsible for contracting with A&R.

But it's unclear how A&R can trace its economic injury to the Attorney General. *See Allen v. Wright*, 468 U.S. 737, 756–59 (1984) (holding that, even when plaintiffs allege "one of the most serious injuries recognized in our legal system," it's not justiciable where "the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing"). Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding

whether and to what extent it will bring enforcement actions in hypothetical cases. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013).

These principles plainly bar A&R's attempt to trace its injuries to the Attorney General. That's for two independent reasons. First, A&R has not shown that the Attorney General *could* interfere with the City's contracts. Chapter § 2271 merely provides a list of definitions, *see* Tex. Gov't Code § 2271.001, and then a list of requirements, *see id*. § 2271.002. It doesn't expressly provide a way for the Attorney General to enforce those requirements. The statute's "textually unenforceable language" poses a traceability problem. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021).

Second, the Attorney General hasn't taken any action to suggest he *might* enforce the provision even if he has such power. Plaintiffs must assert "an injury that is the result of a statute's actual or threatened *enforcement*." *Id*. at 2114. And where the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed us to reject the mere potential for enforcement as a "highly attenuated," "speculative chain of possibilities" that cannot trace an injury to the government. *Clapper*, 568 U.S. at 410.

Finally, the City's conduct severs any link between A&R's economic injury and the Attorney General. *See Lujan*, 504 U.S. at 560 ("[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (quotation omitted)); *see also Allen*, 468 U.S. at 757–58 (noting how a third party disrupted the "line of causation"). The City told the district court it would follow state law and include the provision. But the City never attributed its actions to any enforcement or threatened enforcement by the Attorney General. A&R's injury depended on the "unfettered," "independent" choices of the City, "whose exercise of broad and legitimate

discretion [we] cannot presume either to control or to predict," so the injury isn't traceable to the Attorney General. *Lujan*, 504 U.S. at 562 (quotation omitted). And A&R does not have standing to sue him.

C.

A&R nonetheless contends that the Attorney General should not be able to disclaim enforcement of the statute to avoid plaintiffs' standing while also complaining that the injunction interferes with his power to enforce the statute to avoid mootness. True, those positions are in tension. But the age-old jurisdictional rule is that plaintiffs must establish a case or controversy in their complaint *before* they can obtain an injunction. *See United Pub. Workers v. Mitchell*, 330 U.S. 75 (1947). They cannot get an injunction first and ask questions later. And of course, because we're dismissing plaintiffs' action without prejudice,[*] they're free to refile if and when the Attorney General takes the jurisdictionally requisite enforcement actions.

We're also unpersuaded by plaintiffs' suggestion that they can get an injunction without establishing standing and then insulate their victory through mootness. If mootness were just "the doctrine of standing set in a time frame," Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973), then a lack of standing at the beginning of a case would perhaps compel holding there's no jurisdiction at the end of the case. But the Supreme Court has held that Professor Monaghan's time-frame aphorism "is not comprehensive." *Laidlaw*, 528

---

[*] "Our precedents also make clear that a jurisdictional dismissal must be *without* prejudice to refiling in a forum of competent jurisdiction." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021); *see also Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc) ("Ordinarily, when a complaint is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice." (quotation omitted)).

U.S. at 190. And even when there's no jurisdiction at the beginning of the case, the imposition of a judicial remedy can injure the defendant and give the defendant the right to invoke federal jurisdiction by way of appeal. *See ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989); Hart & Wechsler, *supra*, at 158–59. That's what happened here.

\*   \*   \*

For the foregoing reasons, we conclude that the district court lacked jurisdiction to enter its injunction against the Attorney General. We DENY the motion to dismiss the appeal for lack of jurisdiction. We REVERSE the district court and REMAND with instructions to VACATE the injunction and DISMISS the suit against the Attorney General.